UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LA SUISSE, SOCIETE D'ASSURANCES          :
SUR LA VIE, n/k/a  SWISS LIFE AG
                                         : <u>OPINION AND ORDER</u>
                    Third-party plaintiff,
                                         :
     -against-                              06 Civ. 4404 (CM) (GWG)
                                         :

MOSES KRAUS and CARUSO AG,               :

                    Third-party defendants.  :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Plaintiffs' former counsel, Richard M. Mahon, II, has moved to quash a subpoena issued

by third-party plaintiff La Suisse, Societe d'Assurances Sur La Vie, now known as Swiss Life

AG ("Swiss Life").[1]  The subpoena seeks communications between Mahon and Moses Kraus, a

third-party defendant who, before he was sued by Swiss Life, began communicating with Mahon

on a regular basis about this litigation.  Mahon objects to divulging the communications on the

ground that they are protected by the attorney-client privilege.  For the reasons that follow,

Mahon's motion to quash the subpoena is denied because we find that Kraus was not authorized

---

[1] <u>See</u> Swiss Life's Memorandum of Law in Support of Its Request for Post-Judgment Discovery, filed July 29, 2014 (Docket # 213) ("Swiss Life Mem."); Declaration of Jesse T. Conan in Support of Swiss Life Mem., filed July 29, 2014 (Docket # 214); Declaration of Nicholas Karl Goldstone in Support of Swiss Life Mem., filed July 29, 2014 (Docket # 215) ("Goldstone Decl."); Letter addressed to Magistrate Judge Gabriel W. Gorenstein from Richard M. Mahon filed Sept. 12, 2014 (Docket # 221) ("Mahon Letter"); Letter addressed to Magistrate Judge Gabriel W. Gorenstein from Zeb Landsman, filed Sept. 18, 2014 (Docket # 222); Declaration of Jesse T. Conan in Opposition to Mahon Letter (Docket # 223) ("Conan Decl."); Supplemental Declaration of Jesse T. Conan in Support of Swiss Life Mem., filed Sept. 23, 2014 (Docket # 224); Reply Declaration of Richard M. Mahon in Opposition to La Suisse's Subpoena Seeking Attorney-Client and Privileged Nformation [sic], dated Sept. 24, 2014 and filed Nov. 21, 2014 (Docket # 231) ("Reply Decl."); Letter addressed to Magistrate Judge Gabriel W. Gorenstein from Zeb Landsman, filed Sept. 25, 2014 (Docket # 226).

to act as the plaintiffs' agent when he communicated with Mahon.

I.    BACKGROUND

This action was brought by holders of insurance policies — sometimes referred to as "marriage policies," see Mahon Letter at 2 — against Swiss Life to recover benefits under those policies.  See Class Action Complaint, filed June 2, 2005, transferred to the S.D.N.Y. June 12, 2006 (Docket #1).  Mahon was the attorney for the plaintiffs in this action.  See Mahon Letter at 1; Notice of Appearance, filed Feb. 27, 2006, transferred to the S.D.N.Y. June 12, 2006 (annexed as Attach. 11 to Class Action Complaint).   Mahon represented the plaintiffs until July 25, 2012, when his firm withdrew as counsel.  See Mahon Letter at 1; Decision and Order, dated July 25, 2012 (Docket # 148).  The complaint was dismissed with prejudice on February 3, 2014.  See Order Dismissing Action with Prejudice and Directing Return of Funds Posted with the Court (Docket # 196).

In the meantime, on March 17, 2008, Swiss Life filed a third-party complaint against Kraus and a brokerage company, Caruso AG ("Caruso"), both of whom had marketed and sold the insurance policies in question.  See Third-Party Complaint, filed Mar. 17, 2008 (Docket # 22).  Swiss Life sought damages against Kraus and Caruso for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1961 et seq., and indemnification based on breach of fiduciary duty.  See id. ¶¶ 4-6.  On December 17, 2013, Swiss Life obtained a default judgment against Kraus and Caruso, jointly and severally, for attorney's fees and costs in the amount of $1,571,603.11.  See Default Judgment, dated Dec. 17, 2013 (Docket # 193)  On August 6, 2014, after an inquest, Swiss Life obtained a default judgment against Kraus and Caruso for an additional $157,921,020.29 in damages.  See Judgment, dated Aug. 6, 2014 (Docket # 218).

In the subpoena that is the subject of the current motion, Swiss Life seeks documents relating to the payment of Mahon's legal fees in this action and communications between Mahon and Kraus.  See Swiss Life Mem. at 1-3.  Mahon argues that the communications are protected by the attorney-client privilege and has moved to quash the subpoena on that basis.  See Mahon Letter.  Before addressing the merits of those objections, we address the legal basis for the subpoena.

II.      LEGAL BASIS FOR THE SUBPOENA

Swiss Life seeks to obtain the communications between Mahon and Kraus for use in a proceeding it has brought in the United Kingdom to enforce its default judgment in this case against Kraus.  See Goldstone Decl. ¶ 4; Swiss Life Mem. at 1, 3.  One of Swiss Life's attorneys in the United Kingdom states that "[w]hen the U.K. court considers the issue of the enforceability of the Judgment in England, an important factor will be whether or not Kraus had control over [the instant litigation]."  Goldstone Decl. ¶ 5.  Swiss Life thus seeks to obtain discovery as to "communications between Kraus and class counsel, which bear on whether it was Kraus or the named plaintiffs . . . who controlled the putative class action against Swiss Life."  Swiss Life Mem. at 5 (footnote omitted).

Swiss Life relies on both Fed. R. Civ. P. 69 and 28 U.S.C. § 1782 as bases for the subpoena.  See Swiss Life Mem. at 3-6.  "The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment."  EM Ltd. v. Republic of Arg., 695 F.3d 201, 207 (2d Cir. 2012) (citations omitted), aff'd sub nom Republic of Arg. v. NML Capital, Ltd., 134 S. Ct. 2250 (2014).  As one court has noted, "under Rule 69(a) and existing case law, the general rule is that non-party discovery is limited to a search for the defendant's hidden assets."  Costomar Shipping Co., Ltd. v. Kim-Sail, Ltd., 1995

3

WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995).  We thus question whether Rule 69 provides an

appropriate avenue to obtain all the information Swiss Life seeks from Mahon.

It is not necessary to reach this question, however, because Swiss Life also relies on 28

U.S.C. § 1782 to justify the subpoena.  That statute provides in relevant part: "[t]he district court

of the district in which a person resides or is found may order him to give his testimony or

statement or to produce a document or other thing for use in a proceeding in a foreign or

international tribunal . . . ."  28 U.S.C. § 1782(a).  Case law holds that "a district court is

authorized to grant a § 1782 request" when the petitioner demonstrates that

> (1) the person from whom discovery is sought reside[s] (or [is] found) in the
> district of the district court to which the application is made, (2) the discovery [is]
> for use in a proceeding before a foreign tribunal, and (3) the application [is] made
> by a foreign or international tribunal or any interested person.

Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (alterations in

original) (internal quotation marks, citation, and ellipses omitted); accord In re Certain Funds,

Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC, 2014 WL

3404955, at *3 (S.D.N.Y. July 9, 2014).  These statutory elements are met inasmuch as Mahon is

found in this district, the discovery is for use in the U.K. proceeding, and the application is made

by Swiss Life, an interested person.

"[O]nce the statutory requirements are met, a district court is free to grant discovery in its

discretion."  Schmitz, 376 F.3d at 83-84 (alteration in original) (internal quotation marks and

citation omitted).  In exercising such discretion, a district court should consider the factors

described by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241

(2004).  See, e.g, Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80-81 (2d Cir.

2012).  These factors are as follows:

4

> First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . .
>
> Second, . . . a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. . . .
>
> [Third,] a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.
>
> [Fourth,] unduly intrusive or burdensome requests may be rejected or trimmed.

Intel Corp., 542 U.S. at 264-65 (internal citations omitted).

Here, the Intel factors weigh in favor of granting such discovery.  Mahon is not a participant in the U.K. proceeding and the proceedings abroad appear to be entirely appropriate. The U.K. attorney has stated that the information sought will be "highly relevant to the disposition of the U.K. proceeding."  Goldstone Decl. ¶ 7.  He also stated that the U.K. court "will welcome" this evidence, that U.K. procedural rules allow parties to submit relevant evidence, and that U.K. courts are permitted to use foreign discovery devices to gather evidence. Id. ¶ 8.  There is no reason to believe that the effort to obtain discovery here will circumvent any policies of the U.K. regarding discovery, nor is there reason to believe that it will circumvent any policies of the United States.

Finally, we are unable to state on the current record that there is anything burdensome about the request, as is described further below.  Thus, 28 U.S.C. § 1782 provides statutory authority for the subpoena.

III.    MAHON'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE

Mahon asserts that his communications with Kraus are privileged because Kraus was a "policyholder representative" and thus "an agent of the policyholders." Mahon Letter at 4. He points to a declaration of Kraus stating that he communicated with Mahon "as a policyholder liaison and representative who seeks to preserve and protect policy rights in the face of [Swiss Life's] wrongful conduct and breach of insurance contracts before the Court." Id.; see Reply Declaration in Support of Cross-Motion to Quash Subpoenas, filed Sept. 8, 2009 (Docket # 76) ("Kraus 2009 Aff."). Mahon notes that the communications between him and Kraus include topics such as "litigation strategy," "attorney thought processes," "motion strategies," and "confidential client information." Mahon Letter at 4.[2]

A.    Governing Law

Under Fed. R. Civ. P. 45(d)(3)(A)(iii), the court must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." "[T]he party invoking a privilege bears the burden of establishing its applicability to the case at hand." In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003) (citing United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997)); accord Overton v. Todman & Co., CPAs, P.C., 249 F.R.D. 147, 148 (S.D.N.Y. 2008). Under the federal common law of attorney-client privilege, the party asserting the privilege must show that the communication as to which privilege is asserted "(1) [was] a communication between client and counsel, which (2) was

---

[2] Mahon alludes to the existence of "attorney work product" within the materials sought, see Mahon Letter at 4, but nowhere makes an objection to the subpoena based on the work product doctrine, see Fed. R. Civ. P. 26(b)(3). Accordingly, we do not discuss and do not reach the question of whether any of the material sought consists of attorney work product.

intended to be and was in fact kept confidential, and (3) [was] made for the purpose of obtaining

or providing legal advice."  United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d

Cir. 1996) (internal quotation marks and citations omitted); accord Chevron Corp. v. Donziger,

2013 WL 1087236, at *24 (S.D.N.Y. Mar. 15, 2013).[3]

The attorney-client privilege does not normally attach to privileged communications that

are disclosed to persons who are neither the attorney nor the client.  See, e.g., Ratliff v. Davis

Polk & Wardwell, 354 F.3d 165, 170 n.5 (2d Cir. 2003).  Nonetheless, the Second Circuit long

ago held that the privilege covers communications to agents of an attorney, such as an

accountant, where "the communication [is] made in confidence for the purpose of obtaining

legal advice from the lawyer."  United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)

(communication to accountant hired to assist in the rendition of legal services); accord United

States v. Schwimmer,  892 F.2d 237, 243 (2d Cir. 1989) ("Information provided to an accountant

by a client at the behest of his attorney for the purposes of interpretation and analysis is

privileged to the extent that it is imparted in connection with the legal representation.") (citation

omitted).  The Second Circuit has explained the rationale for the rule as follows:

> We have recognized that an attorney's effectiveness depends upon his ability to
> rely on the assistance of various aides, be they "secretaries, file clerks, telephone

---

[3]  Mahon and Swiss Life cite both federal and New York state law to support their positions on the privilege issue, without discussing which law applies.  We apply federal law because the original complaint and the third-party complaint each sought damages under federal statutes, even if state law claims were also asserted.  See Class Action Complaint ¶ 2 (seeking relief and damages under the Civil Rights Act of 1991, 42 U.S.C. § 1981, and New York common law); Third-Party Complaint ¶¶ 4-6 (seeking indemnification from Kraus and Caruso for breach of fiduciary duty and damages under the RICO Act, 18 U.S.C. § 1961).  Where, as here, a case includes federal and state law claims and the evidence sought is relevant to both, "the asserted privileges are governed by the principles of federal law."  von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987) (citing cases); accord Complex Sys., Inc. v. ABN AMRO Bank N.V., 279 F.R.D. 140, 150 (S.D.N.Y. 2011).

operators, messengers, clerks not yet admitted to the bar, and aides of other sorts."  United States v. Kovel, 296 F.2d 918, 921 (2 Cir.1961).  "[T]he privilege must include all the persons who act as the attorney's agents."  8 Wigmore, Evidence § 2301 (McNaughton rev. 1961).

von Bulow, 811 F.2d at 145; accord In re Grand Jury Subpoenas Dated Mar. 9, 2001, 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001) (privilege may cover "communications made to agents of an attorney hired to assist in the rendition of legal services") (internal quotation marks, ellipsis, and citation omitted).

The same principle has been found to apply where the communications involve the agent of a client rather than the agent of an attorney.  The Supreme Court addressed this question in the case of Upjohn Co. v. United States, 449 U.S. 383 (1981), in which it gave attorney-client protection to communications from corporate employees to counsel where the employees communicated "at the direction of corporate superiors in order to secure legal advice from counsel."  Id. at 394; accord In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (protecting communications to and from consultant of corporation that was "essentially. . . incorporated into" the corporation's staff to "perform a corporate function that was necessary in the context of the government investigation" at issue and whose communications were "for the purpose of obtaining legal advice"); see also In re Bieter Co., 16 F.3d 929, 938-39 (8th Cir. 1994) (upholding claim of attorney-client privilege with respect to communications with a consultant that had been retained by a real estate development company).

It is far less typical for protection to be sought for communications with persons who are asserted to be agents of individuals, however.  Corporations, after all, can only act through their agents.  See, e.g., Braswell v. United States, 487 U.S. 99, 110 (1988); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983).  Individuals, by contrast, normally will

8

communicate directly with their attorneys.  See, e.g., In re Grand Jury Subpoenas Dated Jan. 20,

1998, 995 F. Supp. 332, 340 (E.D.N.Y. 1998) ("A private person . . . generally has no need for a

representative to communicate with an attorney.").  Nonetheless, courts in some instances have

protected communications made by (or to) agents of individuals for the purposes of giving or

seeking legal advice.  Thus, In re Grand Jury Proceedings Under Seal, 947 F.2d 1188 (4th Cir.

1991), held that communications between an individual and his accountant that occurred as part

of the client's efforts to obtain legal advice were privileged.  See id. at 1191.  Neighborhood

Development Collaborative v. Murphy, 233 F.R.D. 436 (D. Md. 2005), held that

communications involving a "financial consultant and adviser" who acted "as conduit of

information" between a client and his attorney were privileged where they were made for the

purpose of obtaining legal advice.  Id. at 437, 440-41; accord Benedict v. Amaducci, 1995 WL

23555, at *1-2 (S.D.N.Y. Jan. 20, 1995) (communications involving an individual functioning as

"the equivalent of 'an independent contractor,' advising plaintiffs on financial matters and

preparing them for the prospect of litigation" would be protected as long as they were made at a

time "he was acting as plaintiffs' representative with respect to litigation"); Carte Blanche

(Singapore) PTE., Ltd. v. Diners Club Int'l, Inc., 130 F.R.D. 28. 34 (S.D.N.Y. 1990) (individual

hired by a client to assist in a transaction for which legal advice was obtained was agent of client

for purposes of attorney-client communications); cf. SEC v. Wyly, 2011 WL 3366491, at *2

(S.D.N.Y. July 27, 2011) (presence of a client's agent does not destroy attorney-client privilege

if that agent's "presence was needed to facilitate effective communication of legal advice

between the attorney and the client"); see also Restatement (Third) of the Law Governing

Lawyers § 70 cmt. f (2000) ("A person is a confidential agent [of a client] for communication if

the person's participation is reasonably necessary to facilitate the client's communication with a

lawyer or another privileged person and if the client reasonably believes that the person will hold the communication in confidence.").[4]  In all of these cases, the third party was found or assumed to be the "agent" of the client in the attorney-client relationship.

      B.    <u>Analysis</u>

      Mahon claims that the subpoenaed communications fall under the protection of attorney-client privilege because of a principal-agent relationship between the plaintiffs and Kraus.  For an agency relationship to exist, however, at a minimum there must be a showing of "the principal's manifestation of intent to grant authority to the agent."  <u>Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.</u>, 347 F.3d 448, 462 (2d Cir. 2003) (citations omitted).  The instant case is highly unusual in that there is no evidence that the plaintiffs in this matter ever manifested any intent to grant authority to Kraus to act as their agents for purposes of seeking legal advice.  Mahon, who of course bears the burden of proof, has presented no testimony or affidavits from the plaintiffs themselves on this question.  While Mahon presumably would have been the recipient of any expressions of intent from his clients, he too provides no testimony that any of the plaintiffs told him that they wished Kraus to act on their behalf.  The affidavits of Kraus himself are similarly devoid of any such evidence.

      To be sure, Kraus and Mahon detail Kraus's high degree of involvement in the litigation.  Thus, Mahon asserts that Kraus assisted him during the litigation by "coordinat[ing] communications with policyholders and family members," "contact[ing] expert witnesses in

---

    [4]  One court has held that an individual may use an agent to communicate with a lawyer only in "extraordinary cases, as, for example, where a client needs an interpreter, or where he is so seriously injured that he cannot deal directly with counsel."  <u>In re Grand Jury Subpoenas Dated Jan. 20, 1998</u>, 995 F. Supp. at 340 (citation omitted).  It is not necessary to reach this issue because, as described below, no agency relationship has been established between plaintiffs and Kraus in the first place.

Europe," and "coordinat[ing] translations of documents."  Reply Decl. ¶ 8.  Kraus states his

communications with Mahon and his firm "were made in order to provide or further legal

services to protect the interests of the policyholders."  Kraus 2009 Decl. ¶¶ 3, 6.  Kraus notes

that he helped plaintiff Moskovitz find legal counsel in the United States and that this was how

Mahon came to represent the plaintiffs in the instant case.  See Declaration of Moses Kraus,

dated May 17, 2006 (annexed as Ex. A to Affidavit of Moses Kraus, filed July 31, 2008 (Docket

# 32) ("Kraus 2008 Aff.)), ¶¶ 25-26.

  While this evidence does much to describe the relationship between Kraus and Mahon

during the litigation, it does nothing to describe the relationship between plaintiffs and Kraus —

more specifically, whether and in what manner plaintiffs authorized Kraus to act as their agent

for purposes of seeking or receiving legal advice from Mahon.  Mahon states only that "Kraus

repeatedly confirmed that he served as liaison and policy representative" for the policyholders,

Mahon Letter at 3, not that plaintiffs ever confirmed this.  As for Kraus, he too has never

claimed that the policyholders authorized his services.  Instead, he states that the only reason he

helped the plaintiffs find counsel in the United States was "because he felt morally obligated to

assist the Caruso policyholders," Kraus 2008 Aff. ¶ 21, not because each plaintiff in this case

asked him to do so.  Thus, Kraus concedes that his "interest and conduct with respect to this

litigation and other U.S. litigations commenced by policyholders against La Suisse have been

solely based upon [his] perceived high moral obligation to assist the policyholders."  Id. ¶ 28

(emphasis added).

  Given the lack of any evidence that plaintiffs authorized Mahon to act as their agent,

Mahon's assertion that there was an agency relationship between plaintiffs and Kraus is

conclusory and fails for lack of proof.  Nonetheless, while it was not required to do so, Swiss

11

Life has put into the record deposition testimony from several plaintiffs in which they affirmatively state that they did not know who Kraus was.  See Deposition of Joseph Moskovitz (excerpt annexed as Ex. C to Conan Decl.) (did not know Kraus and had never asked Kraus to act for him); Deposition of Malka R. Rottenberg (excerpt annexed as Ex. D to Conan Decl.) (had never heard of Kraus); Deposition of Berl Frankel (excerpt annexed as Ex. F to Conan Decl.) (did not know Kraus and had never spoken to him).  Other plaintiffs testified that they came to know of Kraus only after the litigation was already ongoing for several years, shortly before they were deposed.  See Deposition of Sarah Friedman s/h/a Sarah Feruwerger (excerpt annexed as Ex. A to Conan Decl.) (did not know Kraus until he telephoned her approximately four weeks before her deposition); Deposition of Israel Fried (excerpt annexed as Ex. B to Conan Decl.) (first spoke with Kraus when Kraus telephoned him two weeks prior to his deposition and did not know Kraus's role in the litigation); Deposition of Moshe Eckstein (excerpt annexed as Ex. E to Conan Decl.) (had never spoken to Kraus and did not know who he was until Kraus telephoned him four weeks before his deposition); Deposition of Victor Frankel (excerpt annexed as Ex. G to Conan Decl.) (first spoke to Kraus approximately four to five months before his deposition).  None of the deposition excerpts supplied with this motion suggest that any of the plaintiffs authorized Kraus to act as their agent in this litigation.[5]

Notably, in a prior decision in this case that dealt in part with whether the plaintiffs could act as class representatives, the court found that "[a]lthough this action was first filed in 2005, none of the named plaintiffs were aware of the litigation until shortly before their respective

---

[5] Mahon notes that the policyholders were children at the time the policies were issued. See Reply Decl. ¶ 10.  This fact is irrelevant as the issue critical to this motion is what occurred between the plaintiffs and Kraus after this litigation was filed.  There is no evidence that any of the plaintiffs was a minor at the time the litigation started.

depositions in May and June of 2009." <u>Moskowitz v. La Suisse, Societe D'Assurances Sur La Vie</u>, 282 F.R.D. 54, 73 (S.D.N.Y. 2012). The court concluded that "the action was filed <u>without plaintiffs' authorization</u> and knowledge, they only learned of the lawsuit shortly before their respective depositions, and most do not know who is financing the litigation or who makes the decisions." <u>Id.</u> (emphasis added). Mahon's statement that "[t]he policyholders knew of the litigation even if they did not know Mr. Kraus personally," Reply Decl. ¶ 10, is contrary to this finding and in any event fails to address the threshold question of whether the plaintiffs authorized Kraus to act on their behalf.

The testimony of Kraus himself similarly points to a lack of connection between himself and the plaintiffs. He gave a sworn statement that he "never met with any policyholders . . . with respect to the solicitation, negotiation and/or sale of policies." Kraus 2008 Aff. ¶ 8. He further stated that he never transferred or received funds from policyholders in the United States. <u>Id.</u> ¶ 24. Kraus noted that he was a "wholesale broker," <u>id.</u> ¶ 8; that wholesale brokers did not have "direct contact with policyholders," <u>id.</u> at 3 n.1; that his status as broker ended long before this litigation began, <u>id.</u> ¶¶ 12, 13; and that he "never dealt directly with any of the U.S. policyholders," <u>id.</u> ¶ 18. The only suggestion that Kraus has had contact with the policyholders since the time of the sale of the policies is that he helped some of them obtain loans on their policies long before the instant lawsuit was filed, <u>see id.</u> ¶ 29, though it appears this was accomplished through brokers, <u>see id.</u> ¶ 30. Eventually, Kraus helped some of them "find legal counsel within the U.S." <u>Id.</u> ¶ 21. None of this testimony suggests that the plaintiffs here authorized Kraus to act on their behalf in dealing with their attorney about the conduct of this litigation.

Mahon attempts to justify his assertion of the privilege because of the "general rule" that

13

"communications are deemed privileged if they tend to reveal client communications."  Mahon

Letter at 3 (citing P. & B. Marina, LP v. Logrande, 136 F.R.D. 50, 53 (E.D.N.Y. 1991)).  But this

statement assumes that Kraus was Mahon's "client," which Mahon has never claimed.  The mere

fact that Kraus was communicating with Mahon regarding the litigation, even if he did so on a

regular basis, does not by itself establish an attorney-client relationship between Kraus and

Mahon.

    Mahon also asserts that the subpoena is invalid on the ground that a "party seeking

disclosure of protected materials must demonstrate a 'particularized need.'"  Mahon Letter at 5.

The case cited, however, Brown v. City of New York, 2007 WL 415080 (S.D.N.Y. Jan. 30,

2007), was reciting a standard relating to the production of grand jury materials, and is thus

irrelevant.  There is no requirement that a "particularized need" be demonstrated in order to

obtain compliance with a subpoena for otherwise relevant and non-privileged documents.

    In his reply declaration in opposition to Swiss Life's subpoena, Mahon refers to a

decision in another case brought against Swiss life involving similar policies: Weiss v. La

Suisse, 161 F. Supp. 2d 305 (S.D.N.Y. 2001).  See Reply Decl. ¶¶ 11-12.  Mahon quotes a

lengthy portion of the Weiss opinion, in which the court found that the Weiss plaintiffs might

have properly purchased and sought payment on their policies.  See id. ¶ 11.  It is difficult to

discern why Mahon believes Weiss to have any significance here.  Putting aside the fact that

Weiss involved a different group of plaintiffs and does not mention Kraus, its ruling appears to

be irrelevant to the question of agency.  A portion of the Weiss opinion not quoted by Mahon

addresses the principal-agent relationship between the policyholders and their insurance brokers.

See 161 F. Supp. 2d at 311-12.  But Weiss specifically declined to assume that any principal-

agent relationship that existed for the purchase of the insurance policies also existed in other

14

contexts.  See id. at 317.  Thus, Weiss has no relevance here.

Finally, Mahon makes some conclusory assertions regarding the burden of complying with the subpoena.  See Mahon Letter at 5.  This argument, however, is devoid of any specifics as to what steps he would have to take to comply with the subpoena and what their cost would be in either money or time.  Accordingly, the Court directs that Mahon produce the documents called for by the subpoena within 30 days of the date of this decision.  He may apply to the Court for relief from this order in the event there is some aspect of the required production that is unduly burdensome that he can identify with specificity and about which the parties cannot come to an agreement.  Any such application must be made within 14 days of the date of this decision.

IV.   CONCLUSION

For the foregoing reasons, Mahon's motion to quash Swiss Life's subpoena is denied.

Dated: December 1, 2014
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

15